Our colleague from the Eastern District of Louisiana, Judge Barry Ashe, sitting with us by designation. And of course, we are also pleased in the Fifth Circuit to have our new colleague, Judge Irma Ramirez, sitting with us. I believe this may be her third sitting, so she's an old regular now at this point. So thank you. Thank you all. And let's proceed with the first case, 2023-50091, United States of America v. Luis Armando Caballero Grajeda. Ms. Bunn. Good morning. May it please the Court? Ms. Durbin, I'm Sherilyn Bunn, and I represented Mr. Caballero at the trial level and now on appeal. I'd like to reserve five minutes for my rebuttal. On behalf of Mr. Caballero, I am requesting this Court overturn his conviction. Luis Caballero was a man in his forties with no prior criminal history when he was indicted for the crimes of conspiracy to possess and intent to distribute and possession with intent to distribute, crimes that the main alleged co-conspirator, Manny Solaisis, originally told FBI agents that Mr. Caballero was a part of. But Solaisis eventually admitted that his initial statement to law enforcement was a lie and that Caballero wasn't involved in those crimes. In fact, four weeks after Mr. Caballero was convicted at a jury trial, Mr. Solaisis on his own reached out to the FBI and told the FBI that Mr. Caballero was not involved and that the government's main key witness, Mr. Hinojosa, was a total liar. So in this case, the trial judge made what I think were some very unfortunate decisions about granting an evidentiary hearing and a new trial and the admission of 404B evidence. And this Court should overturn Mr. Caballero's conviction for all the reasons raised in our talk about that the judge abused his discretion when he failed to grant the request for a new trial or even to hold an evidentiary hearing to hear the evidence to decide whether a new trial should be granted. And he abused his discretion in admitting evidence of an alleged kidnapping pursuant to 404B. So when we look at the new trial, generally that's when we're evaluating the factors that are referenced as bury factors. And in this particular case, the defense has been able to meet all four of the bury factors. First of all, the first factor is newly discovered evidence unknown to defense prior to trial. So prior to trial, Mr. Solaes' statement was that Mr. Caballero had been involved in the trial. And when Mr. Solaes made that statement, he made it to the FBI when he was trying to negotiate for the FBI to continue delivering a load of drugs so that he could essentially give them information. Four weeks after trial, on his own, he comes in to the FBI or calls the FBI and they record this conversation. And at that point, his statement is Mr. Caballero was not involved. So at that point, it is newly discovered evidence. It did not exist. But did the district court rule that there was a lack of due diligence in contacting and is it Mr. Solaeses? I think it's Solaeses, ma'am. Solaeses. I apologize. No, ma'am. That's what I think it is. Is that, am I wrong on that, that there was a delay and it should have been done earlier, much earlier? That's what the district court ruled, ma'am. And it's perplexing that this was an indicted co-accused, Mr. Solaeses, he was an indicted co-accused. He was the main person that the government wanted in their case. He was in Mexico and the deep pockets of the government with all of its resources and law enforcement agencies couldn't seem to procure Mr. Solaeses availability or be able to contact him. And yet somehow it's the defense's lack of due diligence in discovering this statement. There wasn't a statement to discover, ma'am. There was his testimony to discover though. And his testimony was before the court in the trial court and his person was available to you just as much as it was available to the government to go find and solicit this testimony if it indeed would have existed prior to trial. Is that correct? So I'm going to disagree with you. And the reason that I'm going to disagree with you is because it wasn't available prior to trial. His statements prior to trial were that my client— His person was available to you to solicit this testimony and to ask him whether this testimony would have been his testimony prior to trial. This seems to be a convenient post-trial change in his view, doesn't it? Sir, I don't know that it really is convenient considering that he was turning himself into law enforcement. In fact, I think it's interesting that he made these statements when he was making statements contrary to his own interest. Typically under the law, when an individual is making statements contrary to their own interest, we look at those as more reliable than we do when they are making statements that are self-serving. Mr. Solisas was not arrested at this point in time. He was not under government control. He was wanting to bring himself in to cooperate with the government at that point and basically said that my client had not done anything, that they got it wrong, he was not involved, and that the government's key witness was a liar. I don't think that it's convenient. I think it was a—it was time to tell the truth. He wanted the assistance of law enforcement, and he was leveling the playing field to let them know, here is what happened in this particular case. I just want to go back, sir, to when you said he was available, because typically when we look at cases and statements, when you have an individual that says, your client was involved, they did all of these things, you're not reaching out to that person to bring them into court to say, hey, let me sit you on the stand and see if you'll change your statement today. That would not have been in Mr. Caballero's best interest, and the defense had no indication prior to the date that he called the FBI that he had changed that statement. In fact, the government immediately disclosed that. If I had known that before as his counsel, the government would never have disclosed that, or they wouldn't have had the burden of disclosing it. I would like to— Can we talk about the kidnapping? Would that be okay if we talked about that for a second? Yes, ma'am, the 404B. Right. It's my understanding you argue that Hinojosa was kidnapped for allegedly losing drugs and that that somehow isn't relevant to determining whether Caballero was involved in a drug conspiracy. I'm having difficulty understanding your extrinsic versus intrinsic position on that. First of all, ma'am, the district court said it wasn't intrinsic, but it's a drug—he's kidnapped for losing drugs, and it's about the drug conspiracy, and it's in the same drug—it's not some foreign drug conspiracy or some different temporal drug conspiracy or something. It's this drug conspiracy, right? Yes, ma'am. First of all, our position is that there was no kidnapping. That's first and foremost our position. Right. I understand your position is that this person is a liar, and that's consistently your position, but nonetheless, he's there and saying this. Yes, ma'am. When Mr. Hinojosa is kidnapped initially, what he says is that my client is with a group of people that take him to this location to ask him about a lost load of drugs. There's no indication that my client at that point in time knows about any drug conspiracy that may be involved. All there is is that he's asking about this lost load of drugs at that point. And so our position really is that even if they are asking about a lost load of drugs, there's no indication that when they say my client goes to deliver furniture or that my client has any drug conspiracy for that purpose. And when you look at the record, that's what I argued, or that's what I said in the opening statement. I didn't say Mr. Caballero didn't know anything about a drug conspiracy. What I said was that there would be no evidence that my client knew that the furniture was going to be used to move drugs, and there would be no evidence that my client knew that drugs were in the warehouse. And that was your opening argument, and you presented your evidence with respect to that, and the jury came back with a conviction believing that, in fact, that he did have knowledge of the drug conspiracy, that he did have knowledge of these things that you had suggested in opening. He did not. And, sir, in large part, I think that that was because admitting Mr. Hinojosa's testimony as far as the kidnapping, and even if this Court finds that the kidnapping itself was admissible, my position is that the district court went well over bounds in what it did allow as far as the kidnapping. If I agree that the kidnapping occurred, that in and of itself was prejudicial to allow that there was a gun used after the fact the kidnapping was accomplished, it was extremely prejudicial to allow that Mr. Hinojosa had been there for 30 days, especially knowing in the previous session that Mr. Hinojosa had lied substantially about those issues. And so that overly prejudicial evidence from our position was extremely harmful to Mr. Caballero and his case. It was used to pull at the emotions of a jury, and even if this Court finds that the kidnapping itself should have been admitted, it should find that the kidnapping itself should have been admitted. But his rationale with respect to the guns was that the guns were relevant because they're commonly tools of the trade with respect to drug conspiracies. Are you denying that drugs are commonly tools of the trade with respect to drug conspiracies? I'm not denying that they're common. However, sir, there was no evidence that this particular gun was used to accomplish the kidnapping. And so at that point, what was the relevance of it in regards to the government's argument? Wasn't it used to threaten your client in order to get information about the drugs that were alleged to be part of the conspiracy that had gone missing? It was, sir. But that goes to the 403 balancing test that's a second part of the 404B. And at that point, based on what the government's argument was at trial, all they argued, sir, was that they needed the kidnapping to be able to identify that Mr. Caballero was a part of the conspiracy. There was nothing about the use of the gun that was necessary to establish that. There was nothing about Mr. Hinojosa's testimony that he had been there 30 days and tied to a chair, or however long he had changed it on that particular day, that was necessary to prove Mr. Caballero's involvement. At that point, it was just additional things that were used in a way that was harmful to my client. And really, sir, to pull at the heartstrings of a jury to get them to feel that Mr. Caballero was a bad person. What was your best case for the new trial position, that it would be abuse of discretion in this case? I'm sorry, ma'am? It's your opinion that it's abuse of discretion for the district court not to have granted a new trial. Isn't that just your main argument? What is your best case for that argument, that this would constitute an abuse of discretion under similar circumstances? My best case would be, ma'am, is that we should have had an evidentiary hearing. I meant like, is there an actual Fifth Circuit or Supreme Court case or even other jurisdiction case that would be of help? No, ma'am. Not other than the cases that were cited in my brief. I do feel that this is a case where the judge made some decisions about the credibility of witnesses that were without the benefit of an evidentiary hearing and why an evidentiary hearing wasn't granted in order to simply hear what the evidence was before making that decision, in my opinion, was pretty harmful and illogical. Okay. We have your argument and you've saved time for rebuttal. Thank you very much, Ms. Bunn. We'll hear from Ms. Durbin now. May it please the Court, Laura Durbin for the United States. I'd like to start with the 404B. And we argue in our brief that first it's intrinsic, and then if not, it's 404B is permissible to rebut the claims of knowledge. So there's basically two avenues for the Court to affirm the District Court. For the intrinsic, it was not, this was never used for propensity evidence. It was used, it was the defendant's conduct undertaken to further the conspiracy. It showed, it established the existence of the conspiracy, the defendant's knowledge of it, and his role in it, and his voluntary participation in it. And it was done immediately after the load of drugs was lost by Mr. Hinojosa and his brother. And those drugs were part of the charged conspiracy in this case. So it's all relevant and intrinsic to the ongoing conspiracy that was charged from January 2021 to March 2021. I'd point out, these cases are cited, but Abrego Garcia and Quiroz are two cases in which the Court affirmed evidence that was intrinsic to the charged conspiracy, and those were charges of murder. In Abrego Garcia, there was evidence that the defendant ordered murders of politicians that were investigating the conspiracy, reporters who were reporting on the conspiracy, people involved, co-conspirators, who lost drugs in the conspiracy, very similar to this. And I think rivals, excuse me, rivals, he also ordered those. But for the intrinsic, I just want to say one more time, it was—this kidnapping was done in furtherance of the conspiracy. And if not intrinsic, it's permissible under 404B. In opening, Mr. Caballero claimed that he did not know that drugs were in the warehouse. He did not know that drugs were in the warehouse, that he was part of the conspiracy, and that he was just moving furniture. At that point, this kidnapping became probative of Mr. Caballero's knowledge and his participation in the conspiracy. Why else would he be there, asking about the drugs that were just lost, threatening the Mr. Hinojosa with a gun, and asking—he was asking what happened to the 403 balancing test with the chair and the gun? There's the four—I just want to—it's kind of some clarification in the record. There's the 404B hearing, and then there's Mr. Hinojosa's testimony. In the 404B hearing, he goes into much more detail about what happened. He states that he was tied up with ropes. Mr. Caballero pointed a gun at his head, asking about the drugs, that he was left in the chair, tied up for roughly a month, that he used the bathroom on himself because he could not leave. When we get to the actual testimony in front of the jury, you can see the district court trying to balance those facts to not create undue prejudice, because 404C doesn't say you can't have any prejudice, just unfair prejudice. And so— And he balances by saying you can't go into certain of those details, and those details actually came out during the testimony, didn't they? Some of them. The district court says, government, you cannot reference that Mr. Hinojosa's brother has not been seen since the kidnapping. You can't reference he's been in a chair tied up for 30 days. You can reference the chair. He says the chair is fine, but don't reference the 30 days. And then he's—in the gun, you can reference the gun. The testimony in front of the jury is very brief. It's not graphic. It's not explicit. The question is, what did Mr. Caballero do? He pointed a gun at me, not at my head. He said, I don't know what your drugs were. And then, I forget exactly how it's presented, but he says I was tied in a chair. Then there's an objection, and there's a back and forth. Was there a limiting instruction given by the judge? There was not a limiting instruction. It was not asked for. There is an instruction in the charge that cautions the jury to only consider crimes charged. But if it's viewed as intrinsic, that doesn't really—it's not necessary. Are you relying on the backup argument that it's harmless error, or not really? Is that your weaker argument? I don't know if it's our weaker argument, because if you look at the rest, the jury didn't convict because Mr. Hinojosa was kidnapped. The jury didn't convict because Mr. Caballero pointed a gun at him. The jury didn't convict because he was tied up in a chair. I think your counsel opposite would disagree with all those points. You know, that's her concern is that this was all prejudicial, and that, in fact, maybe they did convict for those reasons. I think if you look at the rest of the evidence, there's plenty of evidence to tie both Mr. Caballero to the conspiracy and to the substantive possession charge. He's seen—there's two places—the warehouse with all the furniture and the warehouse with all the drugs. He's seen at the warehouse with the—or, excuse me, he's seen at the warehouse with the furniture packing up at U-Haul. There was testimony that broken furniture was used to move drugs. Also in the U-Haul is one of Mr. Stilice's cousins. Mr. Hinojosa testified that that was a conspiracy. So there's connections among these people that cannot be explained but for the conspiracy and but for the drug trafficking. If there were two warehouses, which one was Mr. Caballero allegedly seen going into? He was seen the day before on surveillance camera going into the warehouse with the drugs. So in the afternoon, the day before, he stopped in the U-Haul leaving the furniture warehouse. He's seen roughly for 20 minutes going in and out of the warehouse with the drugs. He then—finally, he drives the car out of that warehouse, closes it, and locks it. The next day, he stopped in the U-Haul with instrumentalities of moving—of transporting those drugs and then opens the combination to that—to the drug warehouse, consents to a search, and inside in plain view is a van belonging to Mr. Hinojosa's brother and open inside is drugs—containers full of bundled drugs packaging. There was nothing really else in the warehouse. It wasn't that he was using this warehouse to repair cars. The only thing that was in there was drugs. So from that, you can infer his knowledge that those all tie him to both the conspiracy and both the substantive possession. If there's no other questions as to the—to the kidnapping, I'll briefly touch on the motion for a new trial. Whether—even if it's considered new evidence, even if it's a new evidence case, we know that the—that it's a new evidence case, and—that the bottom line is you have to participate. You have to participate. There's—there's  So why is the way it was, kind of familial, ended up keeping silent and turned to—it continued to silence and turn to violence and turn to bullying. There was a statement prior to trial that the government tendered for—from Mr. Solisis. Other than that, there was no attempt to—to try to secure Mr. Solisis by Mr. Caballero. But even if that's—we say it's due diligence, it's still merely impeaching testimony, and it's inadmissible hearsay. So he does not— Well, let me challenge that it's merely impeaching testimony. It is impeaching. There's no question about that. She—she says, you know, it's going to prove Mr. Solis—this is a liar. But it also suggested that Mr. Caballero wasn't a part of the conspiracy at all. So it's exculpatory in that sense. So it's not merely impeaching. So tell me still why it shouldn't have been—there shouldn't have been a new trial. It's still—there's still the burden of the hearsay. Mr. Solis—Solisis is—I spoke with the—just to confirm, he's now deceased. It's been confirmed that he's deceased. So all that is left is this recording of the conversation between him and the case agent. There's no—Mr. Caballero has not shown how that's admissible, how that would be admissible in a new trial. So he doesn't meet that—that very factor. And then ultimately, he cannot show that there would be a different outcome but for this—this testimony. What was the timing of that? I'm sorry, on the—when did he pass? He's suspected passed after he gave the statement, roughly shortly after he gave the statement. I don't know, when I talked to the AUSA who tried the case, I don't know when it was actually confirmed, when the agent confirmed that he passed. Was it before or after the request by your friend on the other side? There was never—there was never a request. For the new trial? Oh, it was—no, it was before the request for the new trial. Okay. I'm sorry, I missed that. No, it's fine. It's kind of confusing because in the—he—sorry. Mr. Solisis makes the statement shortly after, about a month after the conviction. Within a month, the government discloses it and provides the recording of the conversation. That's roughly in July. And then in December of the same year is when the motion for a new trial is filed. So there's a considerable gap in time. If there's nothing else, we'd stand with—we'd just rely on our briefing beyond that. And if there are no further questions, I will yield back my time. Thank you, Ms. Durbin. We have your argument. Ms. Bunn, you save time for rebuttal. I'd like to just touch briefly on the harmless error argument because the court referenced it, and I don't think that the government can have it both ways. This can't be harmless error, and yet it was so crucial to needing it to show Mr. Caballero's involvement that they had to have it at trial. It has to be one or the other. But the piece of the testimony that's at issue—and it's just a piece. It's not all of the testimony. So to characterize it as all of the testimony, I think we're already going off the rail. But the piece of the testimony is that he's in the chair. So why was that so crucially important to somehow make a difference with respect to convicting him because he's in a chair? I think that although we are talking about it's that piece, I think when that piece is put into the entirety of what the testimony is, it really gives the impression of it being this much more emotional and terrible situation to the jury. It's very hard to just extract that little piece and say, it was just a very small, small piece of it. So being in a chair is more emotional and crucial than the fact that he was kidnapped, the fact that a gun was used in order to threaten him to give information about a conspiracy. It's more important than those things. Not more important, sir, but my position is other than the kidnapping, even if the court had said that the kidnapping met the requirements for admissibility, that is all that should have been admitted. There shouldn't have been any other evidence discussed as far as guns or sitting in a chair or any amount of time. None of that should have been admitted. If the kidnapping itself was the only point for the linking, anything past that was evidence that the government didn't need. And quite frankly, in the course of the trial, the government didn't make a lot of those arguments. The judge made some of those arguments for the prosecution. I did want to just briefly characterize some of the facts that my friend referenced when she was up here, and that is, Mr. Caballero was at the warehouse where the drugs were eventually found the day before he is seen entering. However, on that video, there are other people that are seen entering at times in that particular warehouse. Additionally, those drugs were not in plain view. They were clear on the other side of the warehouse behind a van where when you open the door, it cannot be seen. So the government wants to give this impression that you could pull open the door, and there the drugs were. And that is not what was in that warehouse. What was in that warehouse was you pulled open the drawer, and it was this vastness of darkness where way over on the other side, there were drugs on the opposite side of this van. So there's no indication that those drugs were in the warehouse. Do you agree that that door was locked? It was locked, sir. Do you agree that it was your client that opened the combination lock to provide access to that warehouse? I do not agree with that, sir, and I made that argument. I said that there was another individual in this case that was identified who looked similar to my client who had been running the stash house there, and I argued to the jury that maybe it was the other guy that was there. The government couldn't see on that video that it was exactly my client. Do you agree that there was nothing else in the warehouse except for the van with the drugs? Generally I agree with that, ma'am. There was an office area that had some things in the office area, but generally that was what was present on the warehouse floor. Yes, ma'am, I do agree with that. As far as the new trial, I did make an argument about residual hearsay as far as at sentencing when the district court shut me down. I said this would be admissible pursuant to residual hearsay, and the district court told me, well, I wouldn't have found it reliable, and I think that that's problematic when you look at a Federal Rule of Evidence 807 because it wasn't given the opportunity to demonstrate that that statement had sufficient guarantees of trustworthiness. I think based on Judge Asher's point, if admitted, my position was that it was exculpatory, and so it was more probative on point for any other evidence that I could offer at that. So I do think that there was a theory of admissibility that met the very factors. Thank you, Ms. Bunn. We have your argument. Thank you, ma'am. Thank you all. Thank you. This case is submitted. We appreciate the argument.